## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**AMY LOKEY POSEY,**

**Plaintiff,**

-vs-                                                    **Case No.  6:14-cv-1048-Orl-37DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability insurance benefits.  For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **REVERSED** and the matter be **REMANDED** for additional proceedings.

## Procedural History

Plaintiff applied for benefits, alleging that she became unable to work on May 14, 2010 (R. 241, 291). The agency denied Plaintiff's applications initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ").  On May 14, 2012, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled (R. 90-102).  Plaintiff presented additional evidence to the Appeals Council, but it declined to grant review (R. 6-10), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint (Doc. 1), and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to chiari malformation (with resulting pain and surgeries), cystic fibrosis (with associated lung problems, including pain and severe shortness of breath), fibromyalgia, anxiety, severe pain in her neck, back and head, and headaches (R. 128, 295, 304, 324, 329, 331).

*Summary of Evidence Before the ALJ*

Plaintiff was forty three years old on the date of decision, with a year of college and past relevant work as a secretary, most recently working for her father (R. 241, 111-113).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections.  In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff and her father, and opinions from examining and non-examining state agency consultants.  By way of summary, the ALJ determined that Plaintiff had the severe impairments of chiari malformation status post surgeries; fibromyalgia/chronic fatigue syndrome; degenerative disk disease, osteopenia and osteoporosis status post cervical fusion; class 1 cystic fibrosis; history of pancreatic insufficiency; anxiety disorder; tethered cord syndrome status post surgery; and history of neurocardiogenic syncope (20 CFR 404.1520(c))(R. 95), but through the date of the decision, found that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 96-7).  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to:

> to lift and/or carry up to 10 pounds occasionally, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday with the opportunity to sit or stand at will. The claimant cannot climb ladders, ropes, or scaffolds and is limited to occasional climbing of ramps and stairs and balancing, stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to extreme cold and wetness and to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. The claimant must avoid concentrated use of moving machinery and must avoid all exposure to unprotected heights. She is limited

> to work requiring no more than simple, routine repetitive tasks performed in a work
> environment free of fast-paced production requirements involving only simple work
> related decisions and routine workplace changes.

(R. 97).

The ALJ determined that Plaintiff could not return to her past relevant work (R. 101); however, with the assistance of the Vocational Expert ("the VE"), the ALJ found that other work existed in significant numbers that Plaintiff could perform (R. 101-02), and therefore, the ALJ found Plaintiff was not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff asserts numerous objections to the administrative decision, contending that: 1) the ALJ failed to adequately address limitations arising from Plaintiff's cystic fibrosis and, thus, the ALJ's finding that Plaintiff could maintain work activity is not supported by substantial evidence; 2) the ALJ improperly substituted her judgment for that of the treating specialists; 3) the ALJ erred in formulating the hypothetical posed to the Vocational Expert; 4) the ALJ erred in failing to include and properly evaluate Plaintiff's headaches; 5) the Vocational Expert erred in his testimony; 6) the Appeals Council erred in failing to grant review and the additional evidence submitted warranted remand; and 7) the credibility analysis is "deeply flawed." The Court examines these issues in the context of the sequential assessment used by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff's objections relate to the evaluation of her impairments at step two, formulation of her RFC at steps three and four, and her ability to adjust to other work at step five.  Plaintiff also challenges the Appeals Council's decision not to accept review, in view of the additional evidence submitted.  Upon review, the Court finds error is plain on the face of the record, and remand is required.

*Step Two: Consideration of Plaintiff's headache impairment*

Plaintiff contends that the ALJ failed to properly consider her allegations of disabling headaches by omitting this impairment as "severe" at step two of the assessment and by failing to fully account for the limitations it presents in the subsequent steps of the evaluation.

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.[1] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.

A mere diagnosis is insufficient to establish that an impairment is severe.  *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities.  An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to

---

[1]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). Thus, a "[c]laimant need show only that his impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986).

Applied here, while the ALJ recognized Plaintiff's chiari malformation[2] at step two, she did not list or evaluate headache pain and limitations as an impairment. Upon review, the Court finds this to be error.

Plaintiff testified about her chronic headaches and the effect her medication has on her ability to function. She noted that she is on narcotics for her chiari malformation and cannot drive (R. 117-118); she can work on the computer for only 15 minutes at a time due to "my headaches" (R. 128); and she can't focus (R. 135-136). Although the Commissioner asserts that "the record contains scant evidence of Plaintiff's migraine headaches following the alleged onset of her disability" (Doc. 25, p. 13), the record before the Court with respect to Plaintiff's headaches does not fit that description. As noted by Plaintiff, the record includes numerous citations to her "chronic" headaches.

On February 24, 2010, three months prior to onset, Plaintiff noted her headaches to her treating pulmonologist (R. 381). She reported them again on October 6, 2010 (R. 539). At her consultative examination on November 2010, she complained of headaches (R. 511, 513). On March 3, 2011, she was assessed with "chronic headaches secondary to Chiari malformation" (R. 685). She

---

[2]According to the National Institute of Neurological Disorders and Stroke:
Chiari malformations (CMs) are structural defects in the cerebellum, the part of the brain that controls balance. Normally the cerebellum and parts of the brain stem sit in an indented space at the lower rear of the skull, above the foramen magnum (a funnel-like opening to the spinal canal). When part of the cerebellum is located below the foramen magnum, it is called a Chiari malformation.
***
Individuals with CM may complain of neck pain, balance problems, muscle weakness, numbness or other abnormal feelings in the arms or legs, dizziness, vision problems, difficulty swallowing, ringing or buzzing in the ears, hearing loss, vomiting, insomnia, depression, or headache made worse by coughing or straining. Hand coordination and fine motor skills may be affected. Symptoms may change for some individuals, depending on the buildup of CSF and resulting pressure on the tissues and nerves. Persons with a Type I CM may not have symptoms. Adolescents and adults who have CM but no symptoms initially may, later in life, develop signs of the disorder.
*See* http://www ninds nih.gov/disorders/chiari/detail_chiari.htm

complained again March 14th (R. 686-87, 709), again on April 20, 2011 (R. 601), and again on June 15, 2011 (R. 598). Treatment records note "persisting headache" (R. 710) and "recurrent daily headache" (R. 711). On June 28, 2011, she was admitted to the hospital with a "history of worsening headaches dizziness, nausea, vomiting and blurred vision for approximately the last three years;" symptoms severe enough to warrant posterior fossa revision surgery (R. 608).[3] Following her surgery, she reported that "she still has neck pain and headaches" (R. 749). She treated in 2011 and 2012 with a pain management specialist, who assessed her with "left suboccipital headache secondary to occipital neuralgia" (R. 745), "bilateral headaches" (R. 751), "chronic pain due to Chiari malformations" in the neck and head area (R. 759), and chronic headache (R. 761). Treatment consisted of Vicodin and other narcotics, as well as bilateral suboccipital nerve blocks (R. 751). Her treating neurologist opined that the "organic neurological and medical problems including recurrent daily headache" she experienced were sufficient to be disabling (R. 741). By any measure, the effect of Plaintiff's headaches was not "so slight" or "so minimal." Plaintiff met her burden of establishing that her headaches were severe, within the meaning of step two.

This does not end the analysis, however, as "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Commissioner of Social Security*, 382 Fed. Appx. 823 (11th Cir. 2010). Here, consistent with the regulations and applicable law, the ALJ credited Plaintiff with other severe impairments at step two and proceeded forward with the sequential evaluation. Thus, although Plaintiff's headaches should have been

---

[3]The posterior fossa is a small space in the skull, found near the brainstem and cerebellum. *See http://www.nlm.nih.gov/medlineplus/ency/article/001404.htm*

included as severe, the omission is only reversible error if the ALJ subsequently failed to fully account for functional limitations arising from them. The Court finds that is just what occurred here.

In contrast to the evidence (including objective testing and surgical findings) of chronic and severe headaches summarized above, the ALJ noted only some of the applicable records:

> The claimant sought pain management for her bilateral neck and upper back pain with left sided headache on April 14, 2011. Sanjay Sastry, M.D., prescribed medication and administered injections and on May 18, 2011, the claimant reported some short-term relief from the injections and stated that the medication is helpful (Ex. 28F)

(R. 99).  The ALJ also found that Plaintiff:

> reported an exacerbation of symptoms beginning in January of 2011. Surgery was recommended and performed in June of 2011 and there is *no record of significant treatment* or ER visits following surgery *suggesting satisfactory results and management of symptoms.*

(R. 100 emphasis added).  In view of the 2011 and 2012 treatment records of Plaintiff's pain management physician, which it appears were not reviewed or considered by the ALJ,[4] an assertion of no significant treatment and satisfactory results and management of symptoms is not supported by substantial evidence.

A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner of Social Sec.,* 265 F.3d 1214, 1219 (11th Cir. 2001).  As Plaintiff's headaches were not appropriately evaluated at step two the administrative decision should be reversed, and the matter remanded for additional consideration.

Although this conclusion is dispositive, it is not the only error the Court sees here.

*Steps Three and Four: Formulating the RFC*

---

[4]At the hearing on March 28, 2012, Plaintiff's non-attorney representative noted that the record did not include all of the medical records during the pertinent time period and the ALJ agreed to hold the record open for two weeks for further submittals (R. 130-133, 142).  On April 2, 2012, well within this period, additional records were submitted (R. 763-802), but this exhibit (Exhibit 30F) is not listed on the list of records the ALJ claims to have considered, and no mention is made of them in the decision. As the ALJ is required to consider all evidence in the record, *see* 20 C.F.R. § 404.1520(a)(3), this is reversible error.

Plaintiff has raised several objections to the findings regarding her RFC, contending that the limitations arising from her cystic fibrosis ("CF") preclude work; the RFC should have contained restrictions regarding her severe cervical/neck limitations; and the ALJ improperly rejected the numerous opinions of *all* of her treating physicians. While the Court is not persuaded by all of Plaintiff's contentions, it agrees that the RFC formulation must be revisited.

With respect to her CF, Plaintiff testified that her condition required several lengthy breathing treatments a day (R. 116-7). Her treating pulmonologists confirmed that Plaintiff's condition requires:

> three-four times daily of Chest Physical Therapy (CPT), with four nebulized medications before and/or after CPT 2-3 times a day. CPT treatments take about 20-40 minutes and nebulizer treatments take about 20 minutes apiece.

(R. 430).

Plaintiff contends that the ALJ never addressed the issue of her daily need for lengthy breathing treatments and failed to explain how these treatments could be vocationally accommodated.

In her brief, the Commissioner agrees that the ALJ "never rejected Plaintiff's need for breathing treatments," but contends that such treatments are nonetheless consistent with Plaintiff's ability to work "because Plaintiff could perform her breathing treatments before and after work and during her lunch break." (Doc. 25, p. 5). The Commissioner's argument, however, is not based on any finding by the ALJ. While noting Plaintiff's testimony that she takes three breathing treatments a day and acknowledging the pulmonologists' recommendations for CPT and breathing treatments (R. 98), the ALJ does not make any findings with respect to these treatments, in the RFC or otherwise. Although the Commissioner contends that this failure to make an explicit finding regarding this limitation is harmless because Plaintiff "could" perform the treatments before and after work and during her thirty minute lunch period, the scope of review does not include consideration of a post hoc rationale that might have supported the ALJ's conclusion. *See Owens v. Heckler,* 748 F. 2d 1511, 1516 (11th Cir. 1984). Moreover, even if the Court were to credit the Commissioner's interpretation that

Plaintiff could perform her mid-day treatment during lunch, Plaintiff testified that the breathing treatment she takes every morning is followed by the CPT ("the flutter") treatment, and lasts "two, two and a half hours" (R. 116). Assuming she starts her treatment every day at "eight to nine" as she testified, she would not finish her morning treatment until hours later. The ALJ's failure to evaluate the vocational limitations inherent in this treatment regimen compel remand for additional fact-finding.

Plaintiff also objects to the ALJ's rejection of *all* of the treating specialists' opinions of disabling limitations. In addition to the treating pulmonologists' opinions that Plaintiff's CF would "very likely interfere" with her ability to work (R. 721, 762, *see also* 430), Plaintiff's records include the opinion of Roger Kula, M.D., a neurologist and Medical Director of the Chiari Institute's North Shore location, who offered a detailed functional assessment in March 2011, that indicated full-time competitive work was precluded (R. 575-78). Several other physicians have also noted various restrictions and limitations in Plaintiff's range of motion (*See, e.g.,* R. 518, 747, 749, 751).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and

laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Here, the ALJ gave several reasons for discounting some of the opinions regarding disabling limitations offered by Plaintiff's physicians and the reasons offered are supported by the evidence the ALJ cites. However, it does not appear that the ALJ considered the complete record in formulating these conclusions, and the ALJ does not address all of the pertinent opinions. In addition to not considering the full records of the pain management providers (discussed above), it appears that the ALJ also did not consider the full opinion of one of the treating neurologists.[5] The reconsideration

---

[5] The ALJ refers to an RFC form completed by "Dr. Kerr" on March 14, 2011 (R. 99, citing Ex. 15F). The ALJ notes that "Dr. Kerr did not reference any medical records or objective findings for support" (R. 99) and gives the opinion little weight, as the severe restrictions "are not supported by the record evidence and are inconsistent with the claimant's own report of her abilities/activities." (R. 100). Exhibit 15F, however, is a form completed by treating physician Dr. Kula. Dr. Kula's full opinion of the same date, complete with numerous objective findings and referencing medical records, is included in the administrative record in Exhibit 21F (R. 705-711), but was not discussed/acknowledged by the ALJ.

of Plaintiff's alleged impairments recommended above requires that all of the medical evidence, including the opinion evidence, be revisited, as well.

*Credibility and the Pain Standard*

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Plaintiff objects to the ALJ's evaluation of her credibility, contending that the ALJ faulted her for non-compliance with her medication without considering the evidence that she could not afford the medication. Plaintiff also complains that her receipt of unemployment benefits is not inconsistent with disability and should not be the basis for an adverse credibility finding. Finally, Plaintiff contends that the ALJ overlooked her strong work history.

As set forth above, the undersigned finds that the ALJ did not adequately consider Plaintiff's "underlying medical conditions" that give rise to the pain and limitations claimed. These conditions must be adequately evaluated before the pain standard can be applied. Thus, the Court need not address the specific objections raised here as reversal of the credibility finding is necessary for other reasons.

*Step Five: vocational findings*

Plaintiff next contends that the ALJ erred in that the ALJ posed a hypothetical question to the VE that did not adequately reflect the limitations of the claimant.  Plaintiff also argues the testimony of the VE to be "erroneous, contrary to the DOT, and generally unreliable." As a vocational determination is necessarily tied to a RFC finding, Plaintiff's objections regarding the testimony of the VE are moot in light of the foregoing finding that the RFC formulated here was not formulated in accordance with proper standards.

*Appeals Council*

The final objection goes to the action (or inaction) of the Appeals Council in declining review. As noted by the Eleventh Circuit:

> A social security claimant generally is permitted to present new evidence at each stage of the administrative process. See 20 C.F.R. §§ 404.900(b), 416.1470(b); *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. 20 C.F.R. §§ 404.967, 416.1467. However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ] hearing decision" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b).

*Timmons v. Commissioner of Social Sec.*, 522 Fed.Appx. 897, 902 (11th Cir. 2013).

The Appeals Council has certain obligations in evaluating newly submitted evidence:

> The Appeals Council must adequately evaluate the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir.1980). Where the Appeals Council does not adequately evaluate new evidence, but instead perfunctorily adheres to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence. *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.1984).

> Apart from the Appeals Council's decision, we review *de novo* the district court's judgment. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir.2007). When new evidence is submitted to and accepted by the Appeals Council and it denies review, the district court conducts a new review of the evidence independently of the Appeals Council. *Id.* at 1266. The district court must consider the new evidence submitted to the Appeals Council and determine whether the Commissioner's decision is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b); *Id.* "[B]ecause a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (*per curiam*) (*citing Ingram*, 496 F.3d at 1262).[]

*Caces v. Commissioner, Social Sec. Admin.*, No. 13-11466-DD,  2014 WL 1243813, *4 (11th Cir. March 27, 2014) (unpublished),[6] *citing*, in footnote, *Mansfield v. Astrue*, 395 Fed. Appx. 528, 530 (11th Cir. 2010) (*per curiam*) (holding same) and *Robinson v. Astrue*, 365 Fed. Appx. 993, 997 (11th Cir. 2010) (*per curiam*) (determining that Appeals Council did not err in failing to make specific findings).

Applied here, while some of the exhibits accepted by the Appeals Council are dated well after the time period at issue and are properly not part of the current application record, certain of the records are time relevant (including treatment records of six visits to pain management from August 2011 through February 2012 - *See* R. 789-802), and others arguably relate to the time frame at issue.[7] Upon independent review, the Court finds the new evidence (which includes the pain management records submitted to the ALJ post-hearing, but not considered) may well have changed the ALJ's decision.  As supplemented, the Court finds that the Commissioner's decision is contrary to the weight of the evidence currently of record, for the reasons set forth above, and remand for consideration of all of Plaintiff's impairments in the context of the complete record pertaining to the pertinent time period, is required.[8]

A final note is in order.  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

---

[6]Unpublished decisions of the Eleventh Circuit are not binding precedent. *See* 11th Cir. R. 36–2. The decision is cited for its persuasive authority.

[7]For example, the December 3, 2013 letter from Plaintiff's treating pain management doctor notes that Plaintiff "has been under my care for the past two and a half years" and *"[d]uring this time"* she has suffered debilitating neck and low back pain (R. 813, emphasis added).

[8]Although Plaintiff urges the Court to reverse for an award of benefits, such is not warranted here.  Remand for an award of benefits is appropriate only where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). That standard is not met here.

not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards.

Because the ALJ's ultimate determination that Plaintiff was not disabled is based, in part, on an incomplete reading of the record and because critical findings are absent, the Court concludes that the determination is not adequately supported by substantial evidence and was not made in accordance with appropriate standards.  As such, it is **respectfully recommended** that the administrative decision be **reversed** and the matter be **remanded** for further administrative proceedings.  Should this recommendation be adopted, the ALJ should reconsider all of the evidence in this matter in accordance with appropriate standards and make further findings as to the vocational limitations, if any, arising from Plaintiff's conditions.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the administrative decision be **REVERSED and the matter be REMANDED under sentence four of 42 U.S.C. § 405(g)**, **for additional consideration of the opinion and other evidence and for further fact finding**.  If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 15, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy